IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PHILLIP ANTHONY CARRERO,<br><br>　　　　　Defendant. | **ORDER AND MEMORANDUM DECISION DENYING MOTION TO DISMISS COUNT 1 OF THE INDICTMENT**<br><br>Case No. 2:22-cr-00030<br><br>District Judge Tena Campbell |

　　　　Defendant Phillip Anthony Carrero filed a Motion to Dismiss Count 1 of the Indictment on September 23, 2022. ECF No. 45. Count 1 charges him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In his motion, Mr. Carrero argues Section 922(g)(1)'s prohibition of firearm possession by a felon is no longer viable following the Supreme Court's recent decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 587 U.S. ----, 142 S. Ct. 2111 (2002). For the reasons detailed below, Mr. Carrero's motion is denied.

**I.　　Background**

　　　　On March 25, 2015, Mr. Carrero pleaded guilty to two felonies under Utah law.[1] On or about December 20, 2021, Unified Police Department Detectives found a loaded gun on Mr. Carrero's person during a felony stop of a stolen vehicle. On February 2, 2022, a grand jury returned an indictment that included, as Count 1, the charge of Felon in Possession of a Firearm

---

[1] Mr. Carrero pleaded guilty in the Eighth Judicial District Court, State of Utah, to Distribution of a Controlled Substance, a second-degree felony under Utah law, case no. 151800249, and to another case charging Distribution of a Controlled Substance, case no. 151800251. For these felony convictions, he was sentenced to serve between 1 and 15 years in prison and committed to the Utah State Prison.

1

and Ammunition in violation of 18 U.S.C. § 922(g)(1) for Mr. Carrero's allegedly unlawful possession of a Remington 45 caliber handgun and associated ammunition on December 20, 2021.  Sealed Indictment, ECF No. 1 (indictment unsealed by ECF No. 7).  Section 922(g)(1) states: "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition."  18 U.S.C. § 922(g)(1).

Mr. Carrero seeks to dismiss Count 1 of the indictment.  He argues that 18 U.S.C. § 922(g)(1) is facially unconstitutional following the Court's decision in Bruen, as impermissible under the Second Amendment to the United States Constitution.  The United States' Response to Defendant's Motion to Dismiss Count 1 of the Indictment was filed on September 28, 2022.  ECF No. 48.  No reply was filed within 7 days after service of the memorandum opposing the motion.  See DUCrimR 12-1(c).

**II.        New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022)**

In Bruen, the Court evaluated the constitutionality of New York's firearm licensing regime, and in doing so rejected the two-step means-end test that the Courts of Appeals had "coalesced around" for analyzing Second Amendment challenges in the years since its decisions in District of Columbia v. Heller, 554 U.S. 570 (2008), and McDonald v. City of Chicago, 561 U.S. 742 (2010).  Bruen, 142 S. Ct. at 2125–26.  In rejecting the test as involving "one step too many," the Court laid out the proper inquiry: "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."  Id. at 2127.  This test "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."  Id.

at 2131. The Court further detailed the analysis a court must undertake in evaluating Second Amendment challenges, stating that,

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 2129–30 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)).

### III. Section 922(g)(1) Survives the Bruen Test

To apply the Bruen test, the court must first consider whether the Second Amendment's plain text covers Mr. Carrero's conduct. It does. Here, the government argues for a constrained reading of "the people" protected by the Second Amendment's protections. See U.S. CONST. amend. II. It argues that as Mr. Carrero is not a law-abiding citizen, he falls outside the scope of "the people" for the purposes of the Second Amendment. ECF No. 48 at 7–8. Some district courts outside the Tenth Circuit have embraced this argument, holding that Section 922(g)(1) is constitutional because felons are excluded from the protections of the Second Amendment, see, e.g., United States v. Collette, 22-CR-00141, 2022 WL 4476790, at *5–8 (W.D. Tex. Sept. 25, 2022). This court declines to read "the people" so narrowly. Instead, it follows courts from within the Tenth Circuit, which have observed that "convicted felons fall within 'the people' as contemplated by the First and Fourth Amendments." United States v. Coombes, No. 22-CR-00189, 2022 WL 4367056, at *4 (N.D. Okla. Sept. 21, 2022). Applying the presumption of consistent usage, they have "decline[d] to carve out felons from the scope of the Second Amendment's protection of 'the people,'" and this court does the same. Id. As there is no dispute the Remington 45 caliber handgun Mr. Carrero was carrying was an "arm," the Second

Amendment's plain text covers, and the Constitution presumptively protects, Mr. Carrero's conduct.

Having found Mr. Carrero's conduct is presumptively covered by the Second Amendment, the court turns to whether the government has justified Section 922(g)(1) "by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Bruen, 142 S. Ct. at 2130. It has. To assess whether a firearm regulation is "consistent with the Nation's historical tradition of firearm regulation," district courts should consider historical precedent from before, during, and after the founding to see whether it "evinces a comparable tradition of regulation" as the regulation being challenged, in a process that will often involve "reasoning by analogy." Id. at 2131–32. In Bruen the Court laid out detailed principles for both the historical and analogical analyses courts are to undertake in assessing whether the government has met its burden. Id. at 2132–33 (quoting Heller, 554 U.S. at 599, and McDonald, 561 U.S. at 628, 767) ("analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*," but "determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar,'" including "how and why the regulations burden a law-abiding citizen's right to armed self-defense"; "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry" because self-defense lies at the core of the Second Amendment); id. at 2136–37 (quoting NLRB v. Noel Canning, 573 U.S. 513, 572 (2014) (Scalia, J., concurring in judgment)) (observing that "when it comes to interpreting the Constitution, not all history is created equal," and recognizing that "where a governmental practice has been open, widespread,

4

and unchallenged since the early days of the Republic, the practice should guide our interpretation of an ambiguous constitutional provision" while underlining that nevertheless, "to the extent later history contradicts what the text says, the text controls.").

Here, via relevantly-similar "historical analogues" the government has provided sufficient evidence from the time period within which the Second Amendment was enshrined to indicate that felons were not considered within the common law right to arms by the Founders, that the Founders did not intend to confer this right upon felons, and that firearm regulations forbidding those convicted of crimes from having firearms is consistent with understandings held by early Americans who adopted the Constitution. See ECF No. 48 at 12–16, 18.   In doing so the government has satisfied its burden to demonstrate that prohibition of firearm possession by felons is consistent with the Nation's historical tradition of firearm regulation.  This court is further persuaded that this is the correct result by the rigorous historical analysis performed by the District Court for the Northern District of Oklahoma, which led that court to the same outcome on this issue.  See Coombes, 2022 WL 4367056, at *4–7.  Section 922(g)(1) is not unconstitutional.

This court is not alone in finding that felon-in-possession regulations survive Bruen. Federal courts inside and outside the Tenth Circuit have assessed the facial constitutionality of Section 922(g)(1) under Bruen's framework.  As far as this court can find, every federal court that has assessed the facial constitutionality of Section 922(g)(1) in the wake of the Bruen decision has held that Section 922(g)(1) is constitutional on its face.  See Coombes, 2022 WL 4367056, at *3–10 (denying Bruen-based facial challenge to constitutionality of Section 922(g)(1)); United States v. Price, No. 22-CR-00097, 2022 WL 6968457, at *6–9 (S.D. W. Va. Oct. 12, 2022) (same); United States v. King, No. 21-CR-255, 2022 WL 5240928, at *4–5

(S.D.N.Y. Oct. 6, 2022) (same); United States v. Charles, No. 22-CR-00154, 2022 WL 4913900, at *1–12 (W.D. Tex. Oct. 3, 2022) (same); United States v. Siddoway, No. 21-CR-00205, 2022 WL 4482739, at *1–2 (D. Idaho Sept. 27, 2022) (same); Collette, 2022 WL 4476790, at *1–9 (same); United States v. Hill, No. 21CR107, 2022 WL 4361917, at *1–3 (S.D. Cal. Sept. 20, 2022) (same); United States v. Jackson, No. CR 21-51, 2022 WL 4226229, at *1–2 (D. Minn. Sept. 13, 2022) (same); United States v. Cockerham, No. 21-CR-6, 2022 WL 4229314, at *1–2 (S.D. Miss. Sept. 13, 2022) (same); United States v. Burrell, No. 21-20395, 2022 WL 4096865, at *2 (E.D. Mich. Sept. 7, 2022) (same); United States v. Ingram, No. CR 18-557, 2022 WL 3691350, at *1–3 (D.S.C. Aug. 25, 2022) (same); United States v. Daniels, No. 03-CR-00083, 2022 WL 5027574, at *4 (W.D.N.C. Oct. 4, 2022) (citing Heller and McDonald in observing, in context of motion to reconsider decision on compassionate release that "Nothing in the Bruen decision . . . casts doubt on 'the longstanding prohibitions on the possession of firearms by felons.'"); United States v. Harper, No. CR21-4085, 2022 WL 4595060, at *2 (N.D. Iowa Sept. 30, 2022) (affirming R&R determining, among other things, that "Bruen did not overrule established precedent upholding bans on drug users and violent felons from possessing firearms").[2]  Other district courts have found similar uniformity.  United States v. Nutter, No. 21-CR-00142, 2022 WL 3718518, at *8 (S.D. W. Va. Aug. 29, 2022) (observing in context of a § 922(g)(9) challenge that the court "has not identified any district court that has granted a similar motion to dismiss any criminal charge under Section 922(g), to date.").  As noted above, this

---

[2] Federal courts have similarly upheld the constitutionality of § 922(g)(1) when considering as-applied challenges.  E.g., Coombes, 2022 WL 4367056, at *11 (upholding § 922(g)(1) as applied to convicted burglar); Jackson, 2022 WL 4226229, at *3 (upholding § 922(g)(1) as applied to defendant convicted of prior felonies that "were nonviolent" but "involved dangerous conduct" and involved drugs, the unlawful possession of a firearm, and drug trafficking).

court's analyses lead it to the same conclusion as other courts that have considered the issue: Section 922(g)(1) survives Bruen.

## IV. Bruen's Impact on the Vitality of Heller and McCane

Tenth Circuit precedent provides another reason that Mr. Carrero's motion must be denied. In addition to laying out the test applied above, the Court contextualized its Bruen holding in relation to its existing interpretations of the Second Amendment. In particular, the Court noted that its holding is "[i]n keeping with Heller." Bruen, 142 S. Ct. at 2126. Indeed the Court "explicitly stated in Heller that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" United States v. McCane, 573 F.3d 1037, 1047 (10th Cir. 2009) (quoting Heller, 554 U.S. at 626).

Pre-Bruen, the Tenth Circuit relied on this language from Heller to repeatedly uphold the facial constitutionality of § 922(g). Id.; see also United States v. Molina, 484 F. App'x 276, 285 (10th Cir. 2012) ("it is evident neither Heller nor McDonald changes the constitutional status of § 922(g) in its prohibition of firearms by felons."); United States v. Gieswein, 887 F.3d 1054, 1064 n.6 (10th Cir. 2018). This court is bound to follow Tenth Circuit precedent unless it is overturned by the Tenth Circuit or a superseding contrary decision by the Supreme Court. See Burlington N. & Santa Fe Ry. Co. v. Burton, 270 F.3d 942, 947 (10th Cir. 2001). Unless Bruen superseded the Tenth Circuit's McCane decision, or the Tenth Circuit or Supreme Court determines that Section 922(g)(1) is not constitutional, this court must follow the Tenth Circuit's previous determination that Section 922(g)(1) is constitutional. Put differently, if Bruen does not change the constitutional status of Section 922(g)(1)'s prohibition of firearms by felons, this court is bound by the Tenth Circuit's statement that Section 922(g)(1) is constitutional, and consequently must deny Mr. Carrero's motion.

7

The opinions in Bruen indicate that the constitutional status of § 922(g) remains unchanged and that McCane remains good law. The majority opinion in Bruen explicitly noted it was "[i]n keeping with Heller." Bruen, 142 S. Ct. at 2126. As noted above, Heller described prohibitions on felons possessing firearms as "longstanding" and expressed explicit support for the endurance of felon-in-possession regulation. 554 U.S. at 626. Justice Kavanaugh's concurring opinion in Bruen, which was joined by the Chief Justice, offers more direct support for the endurance of felon-in-possession regulations, post-Bruen. Bruen, 142 S. Ct. at 2161–62 (Kavanaugh, J., concurring). It notes that "the Second Amendment allows a 'variety' of gun regulations," and Justice Kavanaugh quotes Heller's statement that "[n]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" Id. at 2162 (quoting Heller, 554 U.S. at 626–27). Justice Breyer's dissent expressed a similar view on the endurance of felon-in-possession statutes post-Bruen; joined by Justice Sotomayor and Justice Kagan, it observed that like Justice Kavanaugh, Justice Breyer understood the Court's opinion in Bruen "to cast no doubt" on the felon-in-possession part of Heller's holding. Id. at 2189 (Breyer, J., dissenting).[3] The Bruen opinions indicate that the constitutional status of Section 922(g)(1) has not changed. This court must continue to follow McCane.

Based on the above, the court **ORDERS** that Mr. Carrero's motion be DENIED.

DATED this 14th day of October, 2022.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

---

[3] Also included in this category of regulations from Heller that Justice Breyer understood to be untouched by Bruen were prohibitions on the possession of firearms by the mentally ill and laws imposing conditions and qualifications on the commercial sale of arms. See id.