IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

CENTRAL DIVISON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>PHILLIP ANTHONY CARRERO,<br><br>   Defendant. | **ORDER AND MEMORANDUM DECISION DENYING MOTION TO WITHDRAW GUILTY PLEA**<br><br>Case No. 2:22-cr-00030-TC-JCB<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Jared C. Bennett |

Defendant Phillip Carrero pled guilty to one count of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm and Ammunition). He has since moved to withdraw his plea. Mr. Carrero argues that his plea was not knowing and voluntary because when he pled guilty, he did not know about evidence that was revealed for the first time at an evidentiary hearing months after his plea. For the reasons stated below, the court denies the motion.

## BACKGROUND

In February 2022, a grand jury indicted Mr. Carrero for one count of 18 U.S.C. § 922(g)(1). (Indictment, ECF No. 1.) On November 7, 2022, Mr. Carrero pled guilty before Magistrate Judge Daphne Oberg. (Change of Plea Hr'g Tr., ECF No. 103.) The Presentence Investigation Report (PSR) was then filed on February 15, 2023. (PSR, ECF No. 73.) Both parties filed their positions on sentencing factors shortly after. (Def.'s Position on Sentencing Factors, ECF No. 75; Government's Position on Sentencing Factors, ECF No. 76.)

The court held a sentencing hearing on February 22, 2023. (Min. Entry, ECF No. 77.) At the hearing, Mr. Carrero objected to two sentencing enhancements in the PSR: a four-point enhancement under USSG § 2K2.1(b)(6)(B), for possession of any firearm or ammunition in

1

connection with another felony offense; and a four-point enhancement under USSG § 2K2.1(b)(4)(B), for alteration or obliteration of a serial number on a firearm.  (ECF No. 73; Def.'s Proposed Findings of Fact & Conclusions of Law, ECF No. 89.)  The court continued sentencing and set an evidentiary hearing on the two contested enhancements for April 24, 2023.  (Notice of Hr'g, ECF No. 79; Min. Entry, ECF No. 80.)

Following the evidentiary hearing, all parties filed their proposed Findings of Fact and Conclusions of Law.  (Government's Proposed Findings of Fact & Conclusions of Law, ECF No. 88; ECF No. 89.)  Mr. Carrero then filed a motion to withdraw his guilty plea.  (Mot. to Withdraw Guilty Plea, ECF No. 91.)

The court held a hearing on Mr. Carrero's motion on September 1, 2023.  (Min. Entry, ECF No. 98.)  At the hearing, Mr. Carrero elaborated on his arguments to withdraw his guilty plea.  He challenged the "high-risk" nature of the stop of the truck and argued that the evidentiary hearing revealed inconsistencies with the government's case.  Because he was unaware of this evidence, Mr. Carrero maintains that his plea was not knowing and voluntary.  Additionally, Mr. Carrero believes that he was not given adequate time to review the plea before pleading guilty.

## FINDINGS OF FACT

The evidentiary hearing established the following facts.  On or around December 16, 2021, a United Rentals truck with an attached trailer and piece of equipment[1] was stolen from the Kennecott mine property in Magna, Utah.  (ECF No. 83 at 13:7, 24:11, 31:19–21, 70:13–17.)  Four days later, an unidentified source saw the truck parked in a driveway in Salt Lake City and

---

[1] Whether the piece of equipment was a generator or a welder is disputed.  (Evid. Hr'g Tr., ECF No. 83 at 70:13–17.)

notified the Unified Police Department (UPD). (Id. at 14:3–15:7, 43:22–25.) In separate, unmarked cars, UPD Officers Todd Rasmussen and Harry Holt drove to the Salt Lake City address to investigate. (Id. at 13:16–25, 43:3.) Officer Holt watched the truck from up the street, while Officer Rasmussen surveilled from a few streets away. (Id. at 14:25–15:3.)

A man later identified as Mr. Carrero then got into the truck and began driving. (Id. at 15:10–12, 51:12–14.) Officer Holt alerted Officer Rasmussen and started to follow the truck. (Id. at 15:16–16:3.) A few miles later, the truck stopped at a security gate outside an apartment complex. (Id. at 16:1–3.) When Mr. Carrero's door opened and his feet came out of the truck, Officer Holt set off the emergency lights on his car, signaling for the truck to stop. (Id. at 16:5–7.) Officer Holt deemed the stop "high-risk" because of the crime being investigated. (Id. at 16:23–17:3.) Following the procedure for a high-risk stop, Officer Holt got out of his car with his gun pointed at Mr. Carrero and asked him to get on the ground. (See id. at 16:25–17:3 ("So the high-risk stop is usually what we do when we locate a stolen vehicle. So I exited my vehicle with my firearm, pointing it towards the driver … and I gave him commands to get down[.]").) Once on the ground, Mr. Carrero told Officer Holt that he had a gun. (Id. at 17:25–18:5.) When Officer Rasmussen arrived a short time later, he rolled Mr. Carrero over to his side and removed a gun and ammunition cartridges from Mr. Carrero's waistband. (Id. at 27:4–9, 92:23.) The gun was missing a serial number. (Id. at 20:20–21:4, 48:22–23, 54:4; see Government's Suppl. Sentencing Mem. Ex. 1, ECF No. 81-1 (showing recovered gun missing serial number).)[2]

---

[2] The UPD requested that Adam Kalinowski, a UPD Forensic Technician, swab the gun for DNA and restore the serial number. (ECF No. 83 at 77:9–12.) From researching the gun, Mr. Kalinowski learned that the gun had a serial number when it was manufactured. (Id. at 79:8–10.) And from his personal experience and training, Mr. Kalinowski believed that the gun's serial number had since been ground down. (Id. at 81:7–82:14.)

The officers arrested Mr. Carrero for possession of a stolen vehicle, which is a felony under Utah law. Utah Code Ann. § 41-1a-1316. Officer Rasmussen then read Mr. Carrero his Miranda rights and interviewed him. (ECF No. 83 at 51:3–19.) The interview was not recorded, and no witnesses were present. (Id. at 51:23, 69:8–9.) During the interview, Mr. Carrero told Officer Rasmussen that he got the truck after someone on the Kennecott property told him about it. (Id. at 52:20–25, 63:20–22 ("[H]e told me someone let him on the property, and he took the vehicle[.]").) Mr. Carrero also told Officer Rasmussen that he removed United Rentals stickers from the truck and that he was a convicted felon.[3] (Id. at 53:3–10.)

## ANALYSIS

### I. Withdrawal of Guilty Plea

"Defendants do not have an absolute right to withdraw a guilty plea." United States v. Siedlik, 231 F.3d 744, 748 (10th Cir. 2000) (citation omitted). Rather, defendants may withdraw a guilty plea before the court imposes a sentence only if "the defendant can show a fair and just reason for … the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The defendant has the burden to show a fair and just reason. United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007) (citation omitted).

Whether a defendant has met this burden depends on seven factors: "(1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources." Hamilton, 510

---

[3] Mr. Carrero previously pled guilty to two Utah felonies. He pled guilty to Distribution of a Controlled Substance, Case No. 151800249 and to Distribution of a Controlled Substance, Case No. 151800251. For these convictions, Mr. Carrero was sentenced to serve between one and 15 years in prison and committed to the Utah State Prison. (ECF No. 73 at 10.)

F.3d at 1214 (citation omitted). If the assertion of innocence, assistance of counsel, and knowing and voluntary plea factors weigh against the defendant, the court need not analyze the remaining factors to decide the motion to withdraw. United States v. Marceleno, 819 F.3d 1267, 1272 (10th Cir. 2016).

### A. Assertion of Innocence

"A defendant's assertion of innocence must be 'credible.'" Marceleno, 819 F.3d at 1273 (quoting Hamilton, 510 F.3d at 1214). For an assertion of innocence to be credible, a defendant "must make a factual argument that supports a legally cognizable defense." Id. (quoting Hamilton, 510 F.3d at 1214, 1215 n.2). Here, Mr. Carrero has not made any factual arguments that support a legally cognizable defense. (ECF No. 91 at 3–4.) Instead, he "avers that he has maintained a presumption of innocence throughout the proceedings," "expressed this belief to his counsel and to the [c]ourt," and "still believes he is innocent of the count he pleaded guilty to." (Id.) Merely asserting legal innocence is insufficient.

In any event, Mr. Carrero did not assert his innocence at the change of plea hearing, contrary to his position that he has maintained his innocence throughout all proceedings. (See ECF No. 103 at 20:9–11 ("How do you plead to Count 1 of the indictment, felon in possession of a firearm and ammunition? … Guilty.").) And Mr. Carrero notably has never asserted innocence of the facts of the underlying crime; he has never asserted that he did not have the gun at the time of his arrest or that he is not a convicted felon. (Id. at 15:8–20 ("Is it true … you knowingly possessed a firearm and ammunition? … Yes … Is it true that at the time you possessed the firearm and ammunition, you knew you had previously been convicted of a [felony]? … Yes.").) Accordingly, this factor weighs against Mr. Carrero.

B. **Assistance of Counsel**

The assistance of counsel factor also weighs against Mr. Carrero. The Tenth Circuit applies the two-part Strickland v. Washington ineffective-assistance-of-counsel standard when analyzing the assistance of counsel factor for a motion to withdraw a guilty plea. United States v. Dominguez, 998 F.3d 1094, 1110 (10th Cir. 2021) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance of counsel, the defendant must show that "(1) his counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced [his] defense." Id. (citation omitted). If the defendant fails to show one prong, the court need not analyze the other. Id. (citation omitted). In his motion to withdraw his guilty plea, Mr. Carrero does not claim his counsel has been ineffective. (ECF No. 91 at 4.) He "[did] not deem his lawyer ineffective," and he agreed "his [c]ounsel has exercised due diligence in performing in a constitutionally effective manner." Id. But the court interpreted Mr. Carrero's statements at the September 1, 2023 hearing as an argument that his counsel was ineffective in not moving to suppress the gun found on Mr. Carrero's person after the December 20, 2021 stop of the truck was called into question at the evidentiary hearing.

In United States v. Smith, the defendant made a similar argument while moving to withdraw his guilty plea. 989 F.3d 575, 581 (7th Cir. 2021). The court there found when the alleged deficiency of counsel is based on counsel's failure to suppress evidence, the defendant must prove the motion would be meritorious. Id. (citation omitted). Here, Mr. Carrero argues that the stop was unlawful. But he has not shown that a motion to suppress the gun found during the stop would be meritorious. Investigatory stops—brief seizures by police not constituting traditional arrests—are lawful under the Fourth Amendment when there is reasonable suspicion an individual is engaged in criminal activity. Terry v. Ohio, 392 U.S. 1, 28–31 (1968). When

6

stopping Mr. Carrero, Officer Holt had more than reasonable suspicion; he had probable cause. Mr. Carrero was driving a truck that had been reported stolen. (ECF No. 83 at 13:5–9.) Officer Holt stopped the truck before it could enter a private complex. (Id. at 16:10–22.) The stop was deemed high-risk because of the type of crime being investigated. (Id. at 17:5–7.) During the stop, Mr. Carrero voluntarily told Officer Holt that he was armed, and Officer Rasmussen later carefully retrieved the gun from Mr. Carrero's person. (Id. at 18:1–15.) Mr. Carrero has not shown that a motion to suppress the gun obtained during the stop would be meritorious. Therefore, the court finds that Mr. Carrero's counsel did not provide ineffective assistance.

### C. Knowing and Voluntary Plea

For a plea to be knowing and voluntary, the defendant "must have 'a full understanding of what the plea connotes and of its consequence.'" Marceleno, 819 F.3d at 1276 (quoting United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002)). The defendant must understand the direct consequences of the plea, but he need not understand all collateral consequences of the plea. Dominguez, 998 F.3d at 1105 (citation omitted).

There are procedures in place to ensure that a defendant's plea is knowing and voluntary. Fed. R. Crim. P. 11(b). The court finds that Judge Oberg complied with the requirements of Rule 11 at the change of plea hearing. Fed. R. Crim. P. 11; (see generally ECF No. 103.) Judge Oberg ensured throughout the hearing that Mr. Carrero knew and understood the nature of the charge to which he pled guilty. (ECF No. 103 at 9:11–13, 9:18–24, 10:17–19 ("[D]o you … understand … this agreement? … [Y]ou're going to plead guilty to … felon in possession of a firearm and ammunition … And … we need to talk about … what [elements] the government would have to prove … to convict you of this offense … Do you understand[?]").) Judge Oberg also ensured Mr. Carrero understood the maximum penalty associated with the offense to which

he was pled guilty. (Id. at 10:20–11:5 ("[T]he maximum penalty associated with this offense … [is] a term of imprisonment of ten years, a fine … a term of supervised release … and any applicable forfeiture. Do you understand that penalty?").) Like the defendant in Marceleno, Mr. Carrero was competent at the change of plea hearing, and he did not misunderstand the plea or its consequences, including the potential sentence. 819 F.3d at 1276; (see ECF No. 103 at 7:5–23 (ensuring that Mr. Carrero was competent to plead guilty).) In his motion to withdraw his guilty plea, Mr. Carrero conceded that he "understood the charges against him" when he pled guilty. (ECF No. 91 at 5.)

Judge Oberg verified that Mr. Carrero was "pleading guilty [based on his] own free will because [he] [was] actually guilty." (ECF No. 103 at 16:16–18.) Mr. Carrero indicated that he was, that no one promised him anything in exchange for his plea, and that no one threatened him in any way to convince him to plead guilty. (Id. at 16:10–18.) Finally, in his motion, Mr. Carrero conceded that he "voluntarily entered his guilty plea[.]" (ECF No. 91 at 4.)

Mr. Carrero argues that his plea was not knowing or voluntary due to new, exculpatory evidence revealed at the evidentiary hearing. (Id. at 4–5.) He claims that "the government withheld exculpatory evidence about the validity of initiating the high risk traffic stop, and the credibility of the theft claims made by individuals who never testified at the evidentiary hearing." (Id. at 4.) Had Mr. Carrero known about this evidence, he argues, he would have gone to trial instead of pleading guilty. (See id. at 5 (stating that had he "known at the time what he knows now, he would not have pled guilty").) As stated above, Mr. Carrero has not shown that his argument about the validity of the stop is meritorious. Additionally, Mr. Carrero has not established a Brady v. Maryland violation. 373 U.S. 83, 86 (1963). To show a Brady violation, a "defendant must prove that the prosecution suppressed evidence, the evidence was favorable to

8

the defense, and the evidence was material." United States v. Webb, 651 F. App'x 740, 744 (10th Cir. 2016) (citation omitted). "The defendant must also show that the favorable evidence was in the possession or control of the government." Id. (citation omitted). Mr. Carrero only "claims that the government withheld exculpatory evidence." (ECF No. 91 at 4.) He has not even attempted to demonstrate that the government suppressed any favorable, material evidence in its possession and therefore has not shown a Brady violation.

### D. Remaining Four Factors

Because the above factors weigh against Mr. Carrero, the court need not analyze the remaining four factors. Marceleno, 819 F.3d at 1272. Given that Mr. Carrero has not demonstrated a fair and just reason for withdrawing his guilty plea, the court denies Mr. Carrero's motion.

## II. Application of the Contested Sentencing Enhancements

Because the court is not allowing Mr. Carrero to withdraw his guilty plea, the court will move forward with sentencing. Before doing so, the court must determine whether the two contested sentencing enhancements identified above apply to Mr. Carrero's sentence.

### A. Possession of any Firearm or Ammunition in Connection with Another Felony Offense

The Sentencing Guidelines call for a four-level increase above the base offense level if a defendant "used or possessed any firearm or ammunition in connection with another felony offense …." USSG § 2K2.1(b)(6)(B). This enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense[.]" USSG § 2K2.1 Application Note 14(A). "[P]ossession of a firearm may facilitate an offense by emboldening the possessor to commit the offense." United States v. Justice, 679 F.3d 1251, 1255 (10th Cir. 2012) (affirming application of enhancement where a defendant's possession of two firearms

9

facilitated or had the potential of facilitating his possession of methamphetamine).  For the enhancement to apply, 1) a defendant must have used or possessed any firearm or ammunition in connection with what the defendant knew was a felony offense, and 2) the firearm or ammunition must have facilitated or had the potential to facilitate the felony offense.  United States v. Sanchez, 22 F.4th 940, 941–42 (10th Cir. 2021).

Though it is the government's burden to prove facts justifying the application of a sentencing enhancement, in the Tenth Circuit the government must make this showing by "a preponderance of the evidence, even where a contested fact has a significant impact on the sentence."  United States v. Adams, 846 F. App'x 653, 658 (10th Cir. 2021) (citing United States v. Robertson, 946 F.3d 1168, 1171–72 (10th Cir. 2020)).  Nevertheless, the court finds that the government has not met its burden to prove facts justifying this enhancement, because it has not shown that Mr. Carrero knew the truck was stolen.  In the cases the government cites to support that this enhancement applies, there is a clearer nexus between the firearm and a felony offense.  See United States v. Bunner, 134 F.3d 1000, 1005–06 (10th Cir. 1998) (affirming application of this enhancement where a firearm was found in the bedroom of a defendant 72 hours after a controlled purchase of methamphetamine); see also United States v. Constantine, 263 F.3d 1122, 1126 (10th Cir. 2001) (affirming application of this enhancement where the underlying crime was a residential break-in and the defendant possessed ammunition and a handgun with a silencer); Justice, 679 F.3d at 1255.

In Sanchez, the Tenth Circuit considered a fact pattern involving a stolen vehicle.  22 F.4th at 941–42.  There, the defendant argued that the government failed to prove he possessed the firearm to protect his possession of the stolen car, and therefore it failed to meet the "in connection with" element of this enhancement.  Id. at 942.  The court disagreed, finding

10

that the loaded firearm the defendant possessed while driving the stolen vehicle could embolden the defendant to maintain possession of the vehicle. Id. ("All [this enhancement] requires under our precedents is that [d]efendant's possession of the firearm had the potential to facilitate his possession of the stolen vehicle.").

But in Sanchez, the defendant acknowledged that he was in unlawful possession of the stolen vehicle, which is a felony under New Mexico law. Id. at 941–42. While the government here asserts Mr. Carrero admitted to law enforcement that he stole the truck, the government has not proven by a preponderance of the evidence that Mr. Carrero knew he was in unlawful possession of the truck. At the evidentiary hearing, Officer Rasmussen said that Mr. Carrero admitted to him that he stole the truck in his interview with Mr. Carrero shortly after arrest. (ECF No. 83 at 52:18–19.) But then on cross, Officer Rasmussen said: "[Mr. Carrero] told me that he stole the vehicle. I mean, he told me someone let him on the property, and he took the vehicle[.]" (Id. at 63:20–22.) The government has offered no other evidence to show that Mr. Carrero knew he was in unlawful possession of the vehicle and presented no testimony from the owner of the stolen truck. While Mr. Carrero has not presented evidence showing that he was lawfully in possession of the truck (e.g. title to the truck), it is the government's burden to establish the facts necessary for the enhancement to apply. Because the court finds that the government has not met its burden, the court will not apply this enhancement to Mr. Carrero's sentence.

**B. Altered or Obliterated Serial Number**

The Sentencing Guidelines state that "[i]f any firearm … had an altered or obliterated serial number, increase by 4 levels." USSG § 2K2.1(b)(4)(B). Mr. Carrero maintains that this enhancement should not apply to his sentence because he did not intentionally remove the serial

number. But that fact is not required for the enhancement's application. See Application Note 8(B) of USSG § 2K2.1 ("Subsection (b)(4) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number."). Rather, the possession of an altered or obliterated serial number, regardless of whether the defendant knew about it, is sufficient for the enhancement to apply. Mr. Kalinowski found that the gun in Mr. Carrero's possession at the time of arrest had a serial number when it was manufactured, but that the serial number had since been ground down. (ECF No. 83 at 79:8–19, 81:7–14.) Accordingly, the court will apply this enhancement to Mr. Carrero's sentence.

## CONCLUSION

Because Mr. Carrero has not shown a fair and just reason for withdrawing his guilty plea, the court DENIES his motion. Because the government has not met its burden to show that USSG § 2K2.1(b)(6)(B)—possession of any firearm or ammunition in connection with another felony offense—applies, the court will not apply this enhancement to Mr. Carrero's sentence. The court orders counsel to provide a status report detailing how the parties would like to proceed with sentencing within 30 days from the date of this order.

DATED this 13th day of October, 2023.

BY THE COURT:

_Tena Campbell_
TENA CAMPBELL
United States District Judge